IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Candice P.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 23 C 00965 |
| v. ) | |
| ) | Magistrate Judge Laura K. McNally |
| LEE DUDEK, ) | |
| **Acting Commissioner of** ) | |
| **Social Security,**[2] ) | |
| ) | |
| **Defendant.** ) | |

# AMENDED ORDER[3]

Before the Court is Plaintiff Candice P.'s brief in support of her motion to remand the Administrative Law Judge's ("ALJ") decision denying her disability benefits application (D.E. 14: Pl. Brief in Chief, "Pl. Brief"), and Defendant's memorandum in support of his motion for summary judgment (D.E. 18: Def. Mem. in Support of Mot. for Summ. J., "Def. Mem.").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.
[2] The Court substitutes Lee Dudek for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).
[3] On February 22, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 9.)

I. **Procedural History**

Plaintiff applied for disability insurance benefits on March 13, 2020. (R. 99). She alleged disability beginning September 9, 2019. (R. 219.) Plaintiff's date last insured was December 31, 2024. (R. 244.) The ALJ held a telephone hearing on July 14, 2022 (R. 16) and on August 1, 2022 issued a written decision denying Plaintiff's application, finding her not disabled under the Social Security Act.[4] (R. 24.) This appeal followed. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

II. **The ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims, described below. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 19.) At Step Two, the ALJ determined that Plaintiff suffers from severe impairments of depression, anxiety, borderline personality disorder, and chronic obstructive pulmonary disorder, all of which significantly limit Plaintiff's ability to perform basic work-related activities for at least 12 consecutive months. (*Id*.) The ALJ also found that Plaintiff had medically determinable impairments of left tibial fracture, deep vein thrombosis, GERD, and irritable bowel syndrome, though these were

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

nonsevere. (*Id.*) The ALJ acknowledged Plaintiff's claim of a fibromyalgia impairment but found it was not medically determinable. (*Id.*)

As to Plaintiff's asserted mental impairments of depression, anxiety, and borderline personality disorder, the ALJ evaluated impacts using the four criteria for mental impairments under the Social Security Act regulations: 1) ability to understand, remember, or apply information; 2) ability to interact with others; 3) ability to concentrate, persist, or maintain pace; and 4) ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ found that Plaintiff had a mild limitation in all areas except concentrating, persisting, or maintaining pace, in which Plaintiff had a moderate limitation. (R. 20.) Because Plaintiff's mental impairments do not cause at least two "marked" or one "extreme" limitation(s) in Plaintiff's ability to do basic work activities, they were not deemed severe. (*Id.*)

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal a statutory Listing. (R. 19.) Before Step Four, the ALJ assessed a residual functional capacity for Plaintiff to perform light work "except no more than occasional climbing of ladders, ropes, or scaffolds;" "no more than frequent stooping, kneeling, crouching, or crawling;" and that Plaintiff must "avoid concentrated exposure to pulmonary irritants." (R. 21.) Plaintiff "can understand, remember, and carry out instructions for simple and detailed but not complex tasks with sufficient persistence, concentration, or pace to timely and appropriately complete such tasks." (*Id.*) Plaintiff

3

"can adapt to routine workplace changes" but needs "no fast-paced production rate or strict hourly quota requirements but can meet end-of-day requirements." (*Id.*)

At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a pool servicer. (R. 23.) At Step Five the ALJ found that there were other jobs in the national economy that matched Plaintiff's residual functional capacity. (R. 23-24.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 24.)

### III. Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.

4

1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the

shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted).

The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted). If an ALJ gives specific reasons supported by the record, the Court "will not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

IV.    **Analysis**

Plaintiff contends that the ALJ erred when she found that the opinion of the consultative examiner "[failed] to accurately adopt or incorporate one limitation from his opinion in the mental residual functional capacity determination.[5] (Pl. Brief 5.)

---

[5] Plaintiff did not object to the ALJ's findings about her physical impairments. With the exception of the ALJ's evaluation of medical opinions, Plaintiff also did not object to any aspect of the ALJ's mental impairment analysis. Plaintiff thus waived her right to have these components reviewed by this Court.

6

Plaintiff believes this limitation— that [Plaintiff] 'would have difficulty handling mild to moderate work pressure and stress'"— contradicts the ALJ's conclusion. (*Id.*) Plaintiff's sole argument for remand is that "the ALJ's RFC is less restrictive than [the consultative examiner's] opinion, and the ALJ failed to explain this discrepancy." (Pl. Brief 4.)

When determining Plaintiff's residual functional capacity, the ALJ is required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022); s*ee also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how she considered the first two factors, supportability and consistency, but is not required to explain her consideration of the other factors. 20 C.F.R. § 416.920c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4; 20 C.F.R. § 416.920c(c)(1). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.*; *see also* 20 C.F.R. § 416.920c(c)(2).

As relevant to the Court's decision, the ALJ evaluated three medical opinions. The first was that of the consultative examiner, Kenneth M. Levitan, M.D., who found

7

that Plaintiff "could perform simple and routine tasks. When feeling more stressed or upset, she would tend to focus more on her multiple physical problems and symptoms. She could communicate with co-workers and a supervisor. She could follow, understand, and retain most instructions" but may have trouble managing personal funds. (R. 571.) The ALJ restated these findings and found Dr. Levitan's opinion "overall persuasive" because "it is consistent with and supported by the medical evidence of record." (R. 23.) The ALJ stated that "it should be noted," though, "that the restrictions provided [in the opinion] are vague in nature." (*Id.*)

Non-examining state agency psychologist David Voss, PhD, opined at the initial level in February 2021 that Plaintiff had mild restriction in understanding, remembering, or applying information; mild restriction in interacting with others; moderate restriction in concentration, persistence, or maintaining pace; and mild restriction in adapting or managing herself. (R. 23, 86.) State agency clinical psychologist Tyrone Hollerauer, Psy.D., found the same observations about Plaintiff's mental capacity in March 2022 at the reconsideration level. (R. 105.)

Both state agency doctors elaborated on Plaintiff's moderate impairment in sustained concentration and persistence. They stated that she "can maintain the concentration and persistence necessary to carry out more than simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment," "would have no difficulty attending work regularly and would require no special

8

supervision beyond what is commonly provided in an ordinary work setting," and that, "overall, her mental [medically determinable impairments] would not interfere with her ability to complete routine work tasks." (R. 94, 109.)

Both agency doctors also answered "no" to the question about Plaintiff having adaptive limitations. They elaborated that Plaintiff "has the ability to adapt adequately to work situations and changes that occur in the usual workplace with reasonable support and structure." (R. 95, 109.)

In their comments about Plaintiff's overall mental residual functional capacity, both doctors also stated that, based on all subjective and objective evidence, they found Plaintiff "retains the mental capacity for work related activities that involve more than simple tasks but less than complex duties." (R. 95, 109.) Both state agency doctors reviewed Dr. Levitan's opinion before crafting their own determinations about Plaintiff's mental health limitations. Importantly, both of them specifically noted Dr. Levitan's comment that Plaintiff would "have difficulty handling mild to moderate work pressure and stress." (R. 80, 85, 87, 104, 106.) Further, after reviewing all medical opinions on the record, including that of Dr. Levitan, Dr. Voss concluded "no" as to whether there are "medical opinions about the individual's abilities and limitations that are more restrictive than [the] finding." (R. 95.)

Because both opinions provided the same conclusions, the ALJ considered them together and found them both persuasive. (R. 23.) The ALJ explained that this was

9

because "they are consistent with and supported by the medical evidence of record." (*Id.*) Plaintiff does not challenge the ALJ's analysis of either non-examining agency doctor. (Pl. Brief 3-8.)

Instead, Plaintiff contends that the ALJ's limitation to avoid hourly quotas does not go far enough because "a limitation to no fast-paced production or hourly quotas only limits one kind of work stress or pressure," and that Plaintiff would "still need to assure that her work is completed by the end of each workday, which is in and of itself a production quota, albeit a different type." (Pl. Brief 5.) Plaintiff argues that this daily quota contradicts what she argues is Dr. Levitan's "limitation to 'handling mild to moderate work pressures and stress.'" (Pl. Brief 5.)

As the Seventh Circuit has made clear, ALJs "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, "the ALJ has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir.2010); *see also Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

Here, the ALJ relied on an analysis that came directly from the opining doctors after each one reviewed and evaluated Dr. Levitan's report. When laying this out, the

ALJ provided the logical bridge necessary to show her chain of reasoning, providing the minimal articulation necessary for this Court's meaningful review.

While the ALJ did find Dr. Levitan's opinion overall persuasive, she clarified that his limitations were vague, and therefore she was unable to rely on them. Accordingly, the ALJ looked to the two other doctors whose limitations were clear and whose analysis had already incorporated that of Dr. Levitan. The ALJ also included every limitation provided in those opinions in Plaintiff's mental residual functional capacity determination.

Plaintiff does not acknowledge nor respond to the ALJ's finding that Dr. Levitan's limitations were vague. Other than saying Plaintiff has difficulty with stress, she also does not point to what the alleged functional limitation actually is nor provides evidence for it.

Given the conclusions made by Dr. Voss and by Dr. Hollerauer about Dr. Levitan's opinion, including their overall finding that Plaintiff "would have no difficulty attending work regularly," and that "her mental [medically determinable impairments] would not interfere with her ability to complete routine work tasks" (R. 94, 109), the ALJ did not err in considering a daily quota compatible with Plaintiff's difficulty managing "mild to moderate stress." (R. 571.)

Dr. Levitan found Plaintiff capable of regular work as well, stating that Plaintiff "could perform simple and routine tasks" and "could follow. . . most instructions." (R.

11

571.) Plaintiff does not account for this determination of her work capacity by all three doctors. (R. 94, 109, 571.) Nor does Plaintiff cite to any evidence regarding the alleged impact of mild to moderate stress on her ability to meet a daily quota. (Pl. Brief 3-8.)

The ALJ's determination accommodated Plaintiff's difficulty handling work pressure and stress. In her assessment of all the evidence, the ALJ determined that Plaintiff "would need to avoid fast-paced production rate or hourly quota requirements at work." (R. 22.) The ALJ concluded that Plaintiff could perform only "simple" tasks. (R. 21.) In light of how the opining doctors interpreted stress and pressure and the ALJ's weight of Dr. Levitan's opinion, the ALJ appropriately limited Plaintiff's ability to "timely and appropriately complete [] tasks" only when they are not complex and to expect Plaintiff to "meet [only] end-of-day requirements." (R. 21.)

In outlining Plaintiff's limitations, the ALJ explained that "the medical evidence does not provide objective findings or even subjective complaints that would suggest greater functional restrictions." (*Id.*) The ALJ arrived at her assessment of Plaintiff's mental residual functional capacity from the evidence, which included all three medical opinions. As such, the ALJ adequately explained and substantially supported her findings. This Court will not reweigh the evidence nor substitute its judgement for the ALJ's determination.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's memorandum seeking to reverse and remand the ALJ's decision (D.E. 14) and grants that of Defendant seeking to affirm (D.E. 18).

**SO ORDERED.**

                                      **ENTER:**

*/s/ Laura K. McNally*

**LAURA K. MCNALLY**

**United States Magistrate Judge**

**DATED: March 18, 2025**